(Decided 30th June, 1874.)

## Alfred J. Gent *vs.* William Ensor.

*Prayers and Instructions—Practice in the Court of Appeals— Defective Instructions—Fraud in a Contract of Sale as a Defence in an action by the Vendor against the Vendee, on a Note given for a part of the Purchase money.*

The assumption in a prayer of a fact which should be submitted to the finding of the jury, is a defect which may be relied on in the Court of Appeals, as a valid objection to the prayer where it has been rejected by the Court below, but cannot be urged if the prayer has been granted.

An objection to a prayer which was granted, that it submitted to the jury facts of which there was no evidence, cannot be considered in the Court of Appeals, unless it appear that such objection was distinctly made and decided in the Court below.

In an action to recover on a promissory note given for a part of the purchase money of certain personal property, sold by the plaintiff to the defendant,

the defence relied on was a want, or failure of consideration, and that the note was obtained by fraud, deceit and misrepresentations practiced upon the defendant by the plaintiff. Evidence was offered tending to show the alleged fraud, and that within a reasonable time after its discovery, the defendant offered to rescind the contract of sale, which the plaintiff declined. In such case it is error to instruct the jury, that the plaintiff is not entitled to recover, provided they find, with the other facts enumerated, that the defendant was induced to make the contract of sale, by false and fraudulent representations of the plaintiff; without submitting to them to find that the defendant within a reasonable time after discovering the alleged fraud, re-scinded the contract, or offered to do so.

If in an action on a note given for a part of the purchase money of certain chattels, sold by the plaintiff to the defendant, the latter rests his defence not upon a rescission of the contract of sale, but upon the ground that he was induced to make it by false and fraudulent representations of the plaintiff upon which he relied, he is entitled, if this be found in his favor by the jury, only to recover damages for the fraud by way of recoupment, the amount of which must be ascertained by the jury; and a prayer which takes this question from the jury, and instructs them that the plaintiff is not entitled to recover, is defective.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

*First Exception.*—This is stated in the opinion.

*Second Exception.*—The plaintiff offered eight prayers, the fourth and eighth of which as follows, were rejected, the others were granted:

4. That there is no sufficient proof in this cause to establish the fact that S. S. Gaule was agent for Gent, subsequent to the time when he was employed by Gent upon wages to sell milk for him.

8. That if the jury shall find that Ensor knew at the time that he made the purchase from Gent, that the articles of property bought by him were in the possession of Gaule, and that he, Ensor, at the time of his bargain doubted the value, quality or title of what he purchased,

then they shall find for the plaintiff, unless they shall further find that Gent made some fraudulent and false representations to Ensor about title and quality, which were intended to deceive Ensor, and that he, Ensor, had no fair and reasonable opportunity to discover the untruthfulness thereof.

The defendant offered six prayers, the second and third of which as follows, were granted, the others were rejected:

2. If the jury find from the evidence in this cause, that the plaintiff represented to the defendant that he was the owner of a milk route and milk business, in the City of Baltimore, together with horses, wagons, cans, fixtures, &c., belonging to said business, and that there were $800 of good claims, on his books, and that he offered to sell the same to the defendant, and that the defendant agreed to purchase the same for $1,400, and that the defendant paid six hundred dollars in cash, and gave his two promissory notes for the balance, and that one of said notes is the cause of action in this cause; and if the jury further believe that the defendant was induced to purchase the same upon such representations; and if the jury further believe, that such statements and representations were made by the plaintiff falsely and knowingly, and that he was not the owner at the time of a milk route in the City of Baltimore, as so represented, that then the plaintiff cannot recover in this action.

3. If the jury find that the plaintiff represented to the defendant that he was the owner of a milk business and milk route, and stock and fixtures, in the City of Baltimore, and that there were $800 of debts on the books against responsible parties that would be paid as soon as they returned from the Springs, on the 16th of October, 1872, and that upon such representations the defendant purchased the milk route, milk business, including the accounts on the books of $800 and two horses, and two

Gent *vs.* Ensor.

wagons, and cans and fixtures attached to the business, for which he agreed to pay the plaintiff $1,400, and that he did pay $600 in cash, and give his two notes for $400 each for the balance, and one of the two notes is the cause of action sued on in this case, and that the plaintiff agreed at said sale, that he would come to the City of Baltimore, and show him the books, and have the money, $800 collected for him by the 16th day of October, 1872, and would go with him and show him the milk route, and that the plaintiff neither collected the $800, nor showed to the defendant the milk route, and that the only property that the defendant received under said sale, was the two horses, two wagons, and a lot of milk cans, and some other articles as stated by the defendant in his testimony; and that if the jury shall find that the representations that there were $800 of available debts on his books made by the plaintiff, were falsely and knowingly made by him to induce the defendant to make such purchase and that he was not the owner of a milk route, then the plaintiff cannot recover in this action, and the jury must find for the defendant.

The plaintiff excepted to the rejection of his fourth and eighth prayers, as also to the granting of the second and third prayers of the defendant. The verdict and judgment being for the defendant, the plaintiff appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE and GRASON, J.

*John I. Yellott and John H. Handy,* for the appellant.

The defendant's second prayer is objectionable in that it assumes a rescission on the ground of fraud, and does not leave it to the jury to find whether any rescission of the contract was ever made, or any return or offer to return the goods and property bought, or to place the appellant in the position which he occupied before the contract was entered into. The prayer that the plaintiff is not

entitled to recover must include every fact of the plaintiff's case upon which he might properly claim a verdict. *Franklin and Armfield vs. Long*, 7 *Gill & J.*, 408.

The appellant could not be the owner of a milk route, because such a thing is too intangible to be the subject of property. It is not even a franchise—but at best a good will, and attaches to the person, the property or the business, as the case may be.

Even if the representations were made as assumed by the prayer, and the appellee was induced to purchase upon them, yet if he did not believe them, he cannot set them up as a defence. *Joice and Wife vs. Taylor*, 6 *G. & J.*, 54; *Taymon vs. Mitchell*, 1 *Md. Ch. Dec.*, 499, 500.

And if he had such knowledge that they were false as would lead a reasonable and prudent man to inquire, and he had an opportunity to inquire, and did not inquire, it is his own laches, and he is chargeable with knowledge. The law will not permit him to avoid a contract at his own pleasure, thus speculating on his own negligence. *McAleer vs. Horsey*, 35 *Md.*, 439; *Foley vs. Crow*, 37 *Md.*, 51; *Kerr on Fraud and Mistake*, 76, 77, and *notes; Bell vs. Byerson*, 11 *Iowa*, 233; *Schermerhorn vs. Gouge*, 13 *Abb. Pr.*, 315; *White vs. Seaver*, 25 *Barb.*, 235; *Burton vs. Willers*, 6 *Litt.*, 32; *Irvin vs. Thomas*, 18 *Maine*, 418.

The representations must be deliberately made with a consciousness on the part of the person making them, and they must have been honestly confided in by the person to whom made. *Casey vs. Allen*, 1 *A. K. Marsh.*, 467; *Kerr on Fraud and Mistake*, 75; *Hough vs. Richardson*, 3 *Story*, 690–1–5; *Veasy vs. Doton*, 3 *Allen*, 380.

Where fraud is the ground of avoidance, the representations must be made with intent to deceive.

The same objections may be urged to the defendant's third prayer, also the additional one that it does not state that the representations *did induce* the defendant to purchase.

There is a fatal defect in both these prayers, because it was not left to the jury to find whether the defendant did rescind the contract on the ground of fraud, and further, the Court took away from the jury the question of fact, entirely, as to what amount of recoupment the defendant ought to have. The defendant took the property, the lease and the business, and never returned them to the plaintiff. In fact as to the chattels they were conveyed to the defendant by Gaule. The only payment made was $600. The jury are told by the Court that this was the full value of all the property got by Ensor. If Ensor was entitled to an abatement, it was a question for the jury to determine the amount.

Again, if a rescission was necessary on his part, and a return of the property, that was also a question of fact for the jury to find. And if a rescission had been attempted and a return of the property offered, and refused, and the appellee afterwards sold, then he was bound to sell to the best advantage, and account for the amount. Whether that was done, and the amount, were questions for the jury.

The Court erred in rejecting the fourth prayer of the plaintiff. There was no proof that Gaule was the agent of Gent after the sale to Ensor, and consequently his acts and declarations were not competent to bind Gent, or in any way affect his contract with Ensor, unless made in the execution of that contract.

The rejection of the plaintiff's eighth prayer was erroneous. No other defence being set up except the fraudulent representations of the appellant, intended to deceive the appellee, if the jury found that the appellee before he made the purchase was put on his guard, doubted the representations, and had fair and reasonable opportunity to discover the truthfulness of the statements, the law charges him with notice of their falsity, and having kept silent and acted, he must be taken as having waived them, as he obtained and asked for no warranty.

The only phase of the case that could justify the Court in instructing the jury that the plaintiff was not entitled to recover because of false and fraudulent representations, would be a rescission of the contract.    In that case it would be necessary that the instruction should put the question, whether there had been a rescission, to the jury, as a fact.    None of these instructions do so put the case, or allege either return or offer to return the property. *Groff' vs. Hansel,* 33 *Md.,* 166.

If there was no rescission, and the vendee relies upon the fraud as a defence to the action upon the note, he must show *how much he is damaged.*    It is a question of fact to be left to the jury, as distinctly when set up in this manner, as if it was the subject-matter of an independent suit.

As the prayers then do not go on the hypothesis of rescission, they are faulty, because not leaving the jury to find the abatement, according to the circumstances of the case.

But if the false and fraudulent representations were known to the vendee to be false, *before the execution of the contract,* and he still consummated the purchase—*he has no right to rescind.*    He may rely on the fraud, "by way of defence to the action of the vendor, although there has been a full acceptance by him with knowledge of defects in the property.    An affirmance of the contract by the vendee, with such knowledge, merely *extinguishes his right to rescind the sale.*"    *Groff vs. Hansel,* 33 *Md.,* 166."

*R. R. Boarman* and *J. F. C. Talbott,* for the appellee.

The objection to the testimony of Young was properly overruled by the Court below.   1st.   Because it corroborated the testimony of Ensor on the point of possession, and was offered for the purpose of proving that the appellee did not assume any charge or control of premises No. 62 Mulberry street.   2nd.   Issue having been joined upon the pleas of want of consideration, and that the note sued on was

obtained by fraud, and evidence having been offered without objection at a prior stage of the cause, that Gaule offered to pay the appellant $300 if the appellee would pay $2000 for said premises, milk route, &c. And evidence having also been offered tending to show Gaule was the appellant's agent, without objection.

Agency being a question of fact for the jury to find from the testimony, and if the agency was established to their satisfaction, then it was proper to show by testimony that the appellant's agent, Gaule, retained possession even up to the day of trial, and that the agent's wife rented the property and received the rent. The evidence at any rate could not affect the appellant's case. *Curtis vs. Moore,* 20 *Md.,* 93; *Moore vs. Blondheim,* 19 *Md.,* 172; *Waters vs. Dashiell,* 1 *Md.,* 455; *Mayor, &c. of Balt. vs. Williams,* 6 *Md.,* 235.

The appellant's fourth prayer was properly rejected because it took from the jury their exclusive right to pass upon the question of the agency of S. S. Gaule. The question of agency is not one of law, but one of fact. *Morrison vs. Whiteside,* 17 *Md.,* 452; *Henderson vs. Mayhew,* 2 *Gill,* 393.

The plaintiff's eighth prayer was properly rejected by the Court below.

1st. Because it did not submit the question of whether there had been a sale, but assumes that one had been made. *Lewis vs. Kramer and Rahn,* 3 *Md.,* 265; *Balt. & Susq. R. R. Co. vs. Woodruff,* 4 *Md.,* 242; *Brown vs. Ellicott,* 2 *Md.,* 75; *Boyd vs. McCann,* 10 *Md.,* 118; *Cropper vs. Pittman,* 13 *Md.,* 190; *Smith vs. Wood,* 31 *Md.,* 293.

2nd. Because the whole of the instructions asked in said eighth prayer were granted in substance by the Court in the appellant's other instructions. *New York Life Ins. Co. vs. Flack,* 3 *Md.,* 341; *Pettigrew vs. Barnum, et al.,* 11 *Md.,* 434; *Baltimore & Ohio R. R. Co. vs. Resley,* 14 *Md.,* 424.

The appellee's second and third prayers were properly granted by the Court, and under the plea of want of consideration and fraud, they put the whole case fairly before the jury as presented by the evidence offered on both sides without objection. *Planters' Bank, &c. vs. Bank of Alexandria*, 10 *G. & J.*, 346; 1 *Md. Ch. Dec.*, 496; *Budd vs. Brooke, et al.*, 3 *Gill*, 198.

They were also properly granted because they left it to the jury to ascertain whether the appellant had performed in full its contract. *Hilliard on Sales, page* 6, *sec.* 10; *Champion vs. Short*, 1 *Campbell*, 53; *Hilliard on Sales*, 156; *Hilliard on Sales, page* 401, *sec.* 16; *Witherow vs. Witherow*, 16 *Ohio*, 238; *Sill vs. Rood*, 15 *Johnson*, 230.

BARTOL, C. J., delivered the opinion of the Court.

This suit was brought by the appellant, upon a promissory note drawn in his favor by the appellee, dated Aug. 19th, 1872, for four hundred dollars payable six months after date. Besides the count on the note, the declaration contains the usual money counts, and a count for goods bargained and sold.

The defence relied on by the appellee is a want, or failure of consideration, and that the note was obtained by fraud, deceit and misrepresentation practiced upon him by the appellant.

It appears that in 1871 the appellant, a farmer in Baltimore County, had a lease for five years of a house and premises at No. 62 Mulberry street, which was occupied by Stephen S. Gaule. The appellant also owned certain personal property consisting of two horses, two wagons and harness, with cans, measures, ice-box, and fixtures in the house necessary for carrying on the business of supplying milk to customers in the city. At first Gaule was agent of the appellant, and sold milk which the latter sent him, for wages. Afterwards an arrangement was made between them, by which Gaule agreed to pay for

the milk supplied him by the appellant, which he sold to customers in the city, using for that purpose the horses, wagons and other personal property of the appellant, for which Gaule agreed to pay to the appellant interest on the cost of the same.

This was the relation between Gaule and the appellant in August, 1872, when on the 19th day of that month a contract was made between the appellant and appellee, whereby the latter agreed to purchase the horses, wagons and other personal property used in the business; and also the residue of the term of five years in the premises at No. 62 Mulberry street, for the sum of $1400, of which $600 was paid in cash and two notes of $400 each were given for the residue, one payable in six and one in twelve months, the first of which is the cause of action in this case.

The personal property was in Gaule's possession, but the appellant had a bill of sale of it. To carry out the contract with the appellee, "the bill of sale held by the appellant was released to Gaule," by which we understand the personal property was conveyed by the appellant to Gaule; and the latter executed a bill of sale to the appellee conveying to him the personal property. This instrument was dated Aug. 19th, 1872, and was regularly acknowledged and recorded.

On the same day, a sub-lease of the premises on Mulberry street, was made by the appellant to the appellee for the residue of the term of five years.

Thus far the facts are undisputed, but here arises a conflict in the testimony. According to the evidence of the appellant, the sale included also a transfer of a debt which Gaule owed him, amounting to $500 or upwards, and it was understood that the appellee, was to assume towards Gaule the same relation, which the appellant had; and get the benefit of the same preference in supplying milk,

to be sold to the same customers, upon what appears to be known in the trade as "the milk route."

The appellee testified that the contract of purchase embraced the debts due from customers to whom milk had been furnished, charged on the books, which the appellant represented to be good, and as amounting to $800, and further represented that he would have them collected by the 16th of October, 1872; and also testified that the appellant represented that he was the owner of the "*milk route*" in the city, and that the same was estimated in the purchase, and formed a part of the consideration which the appellee agreed to pay. And he further testified that these representations were false, that no debts were due to the appellant from the customers, and that the right to the milk route was not in the appellant, but was claimed by Gaule and his family. On the other hand the appellant testified, that he did not represent that any money was due him from the customers, or charged on the books. That the appellee well knew the nature of the business, and of his relation with Gaule. That his dealings were not with the customers in the city directly; but with Gaule, who purchased the milk from him, and was alone responsible to him for the same; and what he agreed to sell was the debt due him by Gaule; which according to Gaule's testimony was $790, and further that he made no misrepresentations with respect to the "*milk route.*" That his business connection with Gaule being well known to the appellee, the understanding was that the latter was to take his place in the business with the benefit of the good will attached to the premises No. 62 Mulberry street, and the benefit of the preference in supplying milk, under the arrangement with Gaule. We give the testimony of these witnesses, substantially without repeating their words. To decide upon this conflicting testimony, was properly within the province of the jury; and we have no remark to make upon it.

Gent *vs.* Ensor.

Another conflict in the testimony of the parties, is found in their statements as to the time when the contract was to take effect, and the possession be delivered. The appellee testified that it was to take effect on the 16th day of October, 1872; while the appellant stated in his evidence that it was to go into effect immediately. This question of fact was material for the jury to determine, in considering the effect of the conduct of the parties after the contract was made. It clearly appears by the proof, that after that time, the appellee went on to supply milk to Gaule, who continued in possession of the house, and the personal property; and that the appellant from that time ceased all connection with the business. About the 13th or 14th of October, some disagreement arose between Gaule and the appellee, when the latter for the first time demanded possession of the house and personal property. In December following, when Gaule and his family were about to move out, the appellee took possession of the personal property, and sold it according to his statement for $280, but refused to take possession of the house. He states in his testimony that on the 16th October, when according to his understanding, he was to have possession under the contract, he learned from Gaule that there was no money charged on the books, to be collected and paid to him. He then went to see the appellant, met him at the cattle-show grounds, told him there was no money charged on the books due to him, at the time of the sale, and offered to give up all the property, and let him keep the $600 paid him, if he would give up the two notes; which he refused to do.

Other evidence was given on both sides, but it is not necessary to refer to it here, in order to understand the questions presented by the several rulings of the Circuit Court, embraced in the appellant's exceptions. These will now be noticed in the order in which they appear in the record.

The first exception was taken to the admission of John Young's testimony to the effect, that "he had been in possession of a building on the premises 62 Mulberry street, the entrance to which was on Ivy Alley, since May, 1873, to the time of trial, and that he rented the house from Mrs. S. S. Gaule, who lived on Cathedral street."

In our judgment this evidence was inadmissible, for several reasons. It does not appear that the house occupied by the witness, on the alley in the rear, was included in the lease held by the appellant, and sub-let by him to the appellee; but if it was a part of the same premises, it does not appear that Mrs. Gaule or her husband were agents of the appellant in renting the house, or were acting under his authority, or with his knowledge. It was therefore inadmissible, and was calculated to mislead the jury, by making the impression on their minds that "the appellant was, through her, interfering with the appellee's possession."

2nd. The second exception was taken to the rejection of the *fourth* and *eighth* prayers of the appellant, and the granting of the appellee's *second* and *third* prayers.

We think the *fourth* prayer of the appellant ought to have been granted. There is no evidence whatever in the record, to prove that Gaule was agent for the appellant, after the time when he had been employed by the latter, *upon wages*, to sell milk. The appellant was entitled to an instruction to the jury to that effect. The effort on the part of the appellee, was to bind the appellant by the acts of Gaule, subsequent to the making of the contract, and as there was no proof of agency, it was error to refuse the fourth prayer. As to the appellant's *eighth* prayer, we think its refusal furnishes no ground for reversal. The prayer is defective in assuming the fact of the sale, instead of submitting it to be found by the jury. Such a defect may always be relied on in this Court, as a valid objection to a prayer that has been refused by the Court below;

though under our rules it cannot be urged with respect to a prayer or instruction actually granted, (*Rule* 4,) 29 *Md.*, 2. But besides this, the proposition of law contained in the prayer, so far as the same is correct, was stated to the jury substantially, in the other prayers of the appellant, which were granted.

In our opinion there was error in granting the *second* and *third* prayers of the appellee; each of them instructed the jury that they must find for the defendant upon the hypothesis of facts therein stated. We take no note of the objections urged by the appellant, on the ground that these prayers submitted to the jury facts of which there was no evidence. Such an objection to a prayer actually granted, cannot be considered in this Court, under the rule before cited, unless it appear that it was distinctly made, and decided in the Court below. The substantial defect in both these prayers, is that they claim for the appellee entire exemption from liability upon the note, provided the jury find, with the other facts enumerated, that he was induced to make the contract by false and fraudulent representations of the appellant; without submitting to the jury to find that he had, within a reasonable time after discovering the alleged fraud, rescinded the contract, or offered to do so. This was essential in order to entitle him to the instructions contained in these prayers.

If the appellee meant to rest his defence not upon a rescission of the contract; but upon the ground that he had been induced to make it, by false and fraudulent representations of the appellant, upon which he relied; then, if this were found in his favor by the jury, he would be entitled only to recover damages for the fraud by way of recoupment, the amount of which must be ascertained by the jury; and it was error to grant the prayers, which took that question from the jury, and instructed them that the plaintiff was not entitled to recover.

The legal rights of parties in cases of this kind have been recently decided by this Court in *Groff vs. Hansel,* 33 *Md.,* 164 to 170, where the cases were fully reviewed.

Being of opinion for the reasons stated, that there was error in the ruling of the Circuit Court, stated in the appellant's first bill of exceptions, and also in refusing the *fourth* prayer of the appellant and in granting the appellee's *second* and *third* prayers, the judgment will be reversed and a new trial ordered.

*Judgment reversed, and*
*new trial ordered.*

(Decided 30th June, 1874.)